The next case on the call of the docket today is agenda number 2, case number 111-195, N. Ray Austin M. Counsel for the appellant? May it please the court, counsel. My name is Jackie Bullard and I am from the Office of the State Appellate Defender and I represent the respondent minor in this case, Austin M. Lawyers matter to the reliability and fairness of judicial proceedings. Given the life altering consequences that follow from a delinquency adjudication, lawyers are especially critical at that stage of the proceedings. Children like Austin, who have been charged with a crime and face the same potential prison sentences and adult sentences that adults do, are entitled to defense attorneys. A defense attorney who provides a defense attorney for a criminal offense who provides the same zealous representation, who provides client-directed representation, and who provides conflict-free representation as that attorney would in criminal court. Counsel, the issue before us, whether or not Mr. Novak, is that right? Yes. Whether Mr. Novak had a hybrid representation here, namely GAL as well as attorney, or whether he properly did his due diligence as an attorney in this case? The state in its brief tries to recast the issue as one of a straight essentially ineffective assistance of counsel claim and is trying to understandably back away from the conflict of interest claim because the standard for conflict of interest reversals are so direct and so absolute and so designed to protect the rights of the accused. In this case, the trial court in this case did not expressly appoint Mr. Novak as a guardian ad litem because that was unnecessary. When Mr. Novak walked into that courtroom, he had already been paid by Austin's parents to represent Austin. So from a practical standpoint, when he walked into the courtroom and said, I represent Austin, the court expressed a little bit of concern about whether counsel also represented the parents and counsel said, no, I represent the boys in this case, both Austin and his brother Ricky who were both accused of... Counsel, explain to me, does somebody just hire somebody to be a guardian ad litem or is that directly a court-appointed position? I mean, has it ever happened before? That's an interesting question. One of the things that's very complicated... Isn't that the question? Did the parents hire Mr. Novak as a guardian ad litem like you're saying? Or did the court, does the court appoint a guardian ad litem? And in this case, you said that he didn't. In this case, it doesn't matter to the resolution whether the parents envisioned counsel as acting as a guardian ad litem. And I would suggest that any parent who understands the consequences of delinquency proceedings would not ask for a guardian ad litem. They would ask for a defense attorney to defend their child. In this particular case, when the attorney walked into the courtroom, the trial court described the role of attorneys in delinquency proceedings. And he admonished Austin and his parents specifically. Mr. Novak is entering an appearance for your sons only. He's entering an appearance for these minors, which may or may not be what the minors or the parents think is in their best interest. That is a classic definition of a GAL. Under no other circumstances... The question before was, who appoints the GAL? Is it only the court? A court can appoint a GAL. And parents hire an attorney to be a GAL. An attorney can, the parents can make that hire, but the child is the one who possesses the right to an attorney. And so regardless of what the parents' expectations were when they entered into that, when their child entered into the attorney- client relationship, it's the child who possesses the right to a defense attorney. Does he have learning disabilities? He does, yes. Does he have diminished capacity? Well, there's no indication in the record until the social investigation report is filed in the case that he has any learning disabilities. That's when those learning disabilities come to light in the record. I would not go so far as to say that Austin had diminished capacity. Austin is a minor. Austin has difficulty, more difficulty than other children in absorbing language issues. But that does not rise to the level of, for example, what the rules of professional responsibility define as diminished capacity. But the admonishment by the court to Austin, you said that he was admonished about his attorney. Yes. And what the duties of the attorney are, and I was just wondering if he was able to understand that. I think that's probably a good question, whether minors understand any admonitions in court. But in this case, the court used very simple language and said, this attorney's primary goal is to represent what the attorney thinks is in the minor's best interest, not what the attorney thinks- Would you dispute, counsel, isn't there always a certain aspect in a juvenile case where the attorney is representing the best interest of the child? Never at the adjudicatory stage. Now, having said that, I'm not taking the position that an attorney never considers a client's best interest and relays those to the client and gives the attorney's opinion about what is in the client's best interest. By the way, there's nothing in this record that would indicate that the interests were opposed, right? That the client said, I want to go this way, no, you're going this way because it's in your best interest. I would disagree with that characterization, because in this case, we know that Austin wanted an acquittal. Austin pleaded not guilty. Austin wanted to be acquitted. When the attorney explained some of the steps that he was taking and the decisions that he made, almost all of those decisions were attributable to what the attorney thought was in the minor's best interest. And if I could just read a couple of excerpts of what counsel said, because they're the kind of statements that would never come out of a minor's best interest. He said, I don't view such a proceeding as adversarial as it might be if it were an adult case. He gives us a second reason for allowing the state to proceed by videotape, because we want to know the truth is ultimately the view of the parents. He expounds, because the parents are the ones who are going to decide what is in the best interest of the client.  And I agree with Mr. Lee, who is the prosecutor in this case, as well, that if such acts happens, they need to stop, because an intervention is not inappropriate by way of government to help these boys if these things happened, and because we don't want to cause trauma to the potential witnesses. None of those reasons are related to a zealous defense, a zealous legitimate defense strategy. Those are all related to what the attorney, and the attorney prefaced all of these remarks by saying, I'm explaining why I'm doing this, and why I think that my, these steps are in the client's best interest. So is it your position that both the judge and the lawyer misunderstood the role of the attorney? Yes. For the minor? Yes, I think that counsel explained his role as a GAL, consistent with the role of a GAL, or GAL, best interest representation, hybrid representation, there are several ways that this, what happens in delinquency courts when counsel doesn't act like a defense attorney. There's a variety of terminology that is applied, but essentially it is, can counsel override the express interests of the client about decisions that have traditionally been reserved to clients, based on what the attorney thinks is best. So back to that first question, is it a distinction without merit, then, whether or not we find the issue, whether it was hybrid representation, or whether this attorney just shirked his responsibility to his clients? It matters in terms of the standard overview and the tests that are applied. In the case of a per se conflict of interest, if this hybrid representation, this court finds that an attorney, that the risks are too high when an attorney tries to serve both the express interests of the client and what the attorney thinks is in the best interest of the client, that if those conflicting interests are so serious under the per se rule, reversal is automatic with no further inquiry into the facts of the case. If we step back to a next step and we talk about this being an actual conflict of interest, because it was raised for the first time on the basis of specific choices or decisions that counsel made that were attributed to the conflict. And then finally, if we talk about this just in terms of ineffective assistance, it's the traditional Strickland standard, which talks about whether counsel made an error, whether the errors and the burden falls on the minor to establish that there weren't legitimate strategic reasons for the choices that counsel made, and also that the minor was prejudiced by it. So it's a much more straightforward analysis the closer the court gets to the per se conflict of interest in this case. So it does matter in terms of how the issue is couched. Getting back to my question before, you know, I can understand an abuse and neglect that the court would appoint a GAL for the purposes of helping represent the minor. But we're talking about delinquency proceedings and the theory about delinquency proceedings that it is a quasi-criminal situation here and being charged as irreparable damage on a minor at some point in the future. So if the court and the child or the attorney were misunderstanding the role, then literally the child was without an attorney during the case, because again, counsel didn't act as a zealous advocate and as a defense attorney. I think it's significant in this case that in terms of GALT, when GALT talks about the right, the due process right to an attorney in delinquency proceedings, one of the GALT requirements is before you can ever have a waiver of competent counsel, you have to admonish the minor that he has a right to an attorney. And in this case, the only admonition that the trial court gave to Austin was this admonition that if the attorney thought that something was in Austin's best interest, then it was okay for counsel to proceed on that basis, regardless of anything else. The attorney calls the shots. That's what best interest representation is about. It's what occurred in this case. It's what occurs in other delinquency proceedings, I think, in terms of the amicus brief did a detailed job of discussing what happens. It's also highly unlikely that the court would permit in a delinquency proceeding an attorney not to represent the child. It just doesn't seem likely that that would be the issue. In this case, it's what happened. The attorney walked into the courtroom and the judge said, you do best interest representation. If the judge believed that the attorney was supposed to act like a defense attorney, there would have been absolutely no need for that admonition, that you get best interest representation, and best interest representation means your attorney can override your wishes in that respect. The minor's position is the right to a real defense attorney unencumbered by best interest representation is guaranteed clearly in the terms of the Juvenile Court Act. Significantly, the amendments and the provisions of the Act that we rely on are those parts of the statute that were enacted after 1998, when the Act became essentially adultified, when it became much more punitive than it had been in the past. Article I provides for the general right to counsel to children, and then Article V specifically guarantees minors all of the procedural rights as adults. It prohibits the waiver of counsel under any circumstances, and it's not just any counsel, but it's counsel in the minor's defense. That language was chosen specifically. And then finally, there are times in which a guardian ad litem would be appropriate in a delinquency proceeding. What wouldn't be appropriate is for defense counsel to fulfill that role. But the Juvenile Court Act and the delinquency provisions provides for the appointment of a guardian ad litem. When there's a conflict between the minor and the parent, for example, if the minor, if the parent is a victim of the minor, that would be one example of that, or if the court determines that a separate guardian ad litem would be in the minor's best interest for some reason. The separate guardian ad litem provision in the statute is consistent with the notion that when a child comes into court, there is a guardian or a custodian or a parent who's there to worry about the best interests of the child. That's the role of the parent or the attorney, is to defend the child against the charges. Aside from this hybrid approach, what about reasonable doubt? D.L. was one of the foster children in the home. The circuit court did not find D.L. credible. If you look at Justice Appleton's dissent, his position was the state failed to prove the respondent guilty beyond a reasonable doubt. Would you disagree with that? D.L. It's interesting, we preface the reasonable doubt portion of the argument with noting what happened in terms of what the trial court found. The trial court, after promising the parties to reach a relatively quick decision, didn't issue a verdict in this case for months. And when the court did, the court did exactly that. He found that the three children who were on the video, the three children who were on the video, the three children who were on the videotapes, were not credible. One was wholly incredible, one was a little less incredible, and one was suspect. All three of the statements in those tapes were suspect. So the court acquitted Ricky because Ricky had not made a statement. What the trial court did is the trial court essentially said, literally said, something went on here in this house. Something happened. We don't know what it was. The state hasn't proven exactly what happened. But we've got Austin's admission. The circumstances of Austin's statement to the police were highly suspect. They were not, it was not recorded. Even one of the state's own witnesses, Sherry Foley, who sat in and observed the interrogation, described the techniques that the chief of police used as very aggressive and very loud. Austin was not there voluntarily. He had been put in a car and driven there by his parents who had just discovered what was alleged to have happened in their house. So he wasn't able to walk away, wasn't able to drive away. The interrogation happened relatively late at night. It was after 10 p.m. The state's own witnesses, again, described the interrogation as coercive in nature. The police chief fed Austin the information that he ultimately admitted to. The testimony at trial is that the chief of police told Austin that he was not aware of the incident. He was accused of fellating one of the boys and fondling one of the boys. And so eventually after Austin is subject to this very aggressive interrogation technique, he is a boy who has never experienced this before, has no prior record, and no prior contact with police. He's repeatedly accused of lying by the officer, a technique that has specifically been studied and referred to as a negative feedback technique, whereas if a suspect continues to deny that he's guilty, the interrogator continues to accuse the person of lying, and that particular tactic has been linked with false confessions. Again, Austin was vulnerable. As a 16-year-old, yes, he was 16 chronologically, but he had substantial learning disabilities, specifically learning disabilities relating to language. So there are some serious questions about how he perceived what was being said to him and what he actually understood. And the state managed to videotape the statements of the children, but didn't manage to videotape the statement that Austin made. And just as Appleton found, that under those circumstances, when the state's remaining evidence was so flimsy, and the only real thing that the only real item of evidence that the court hung its hat on was the interrogation, that the interrogation was so unreliable, and the fact that it wasn't recorded, meant that the state had failed to prove its case in this instance. And we would certainly urge this court, I mean, that would be our ultimate request for relief, would be a reversal on reasonable doubt grounds. At a minimum, it would be a new trial, whether based on this hybrid representation that occurred, or the per se conflict of interest in representing a named victim and the accused at the same time. He will be 21 so that if he is a re-adjudicated delinquent, there's nothing that there's no, but he's served his sentence already. He's maxed out his sentence. In fact, he's off, he's completely off of his sentence right now. The sentencing issues are moot. Are there any requirements for him to be an offender on the list? Yes, and that really is the primary reason why we seek reversal in this case, is that he is required to register as a sex offender. The same as an adult, the only exception being he's not on the public registry, but he is required to submit to sex offender registration in a case for 10 years, because this is a misdemeanor, in a case that prompted the trial court to do so. It prompted the trial court to delay a verdict for five months, and prompted Justice Appleton to dissent on reasonable doubt grounds. I see my time has expired. Thank you. Thank you, counsel. Counsel for the appellee. May it please the court, I'm Assistant Attorney General Erin O'Connell on behalf of the people. I'd like to start first with Justice Freeman's question in terms of the sufficiency of the evidence. I don't believe that the circuit court found that D.L.'s testimony was entirely incredible. In its written order, the court actually set up a sort of hierarchy. It said, Willie's testimony was completely incredible. Jonathan's fell somewhere in between, and Dylan's testimony was, quote, suspect. The court then went on to specifically cite the aspect of his testimony that it found problematic, and that was a statement that he made pertaining to an alleged orgy-type situation that occurred. The court found that part of his testimony incredible. The court did believe the respondent's admission. His admission was that he allowed Dylan to perform oral sex on him. Now, that was also a part of Dylan's statement. So if the court believed the respondent's admission, the court necessarily credited that to the admission, plus this corroborating evidence in the form of Dylan's testimony, the state did prove its case beyond a reasonable doubt. Now I'd like to come back to the issue of the hybrid representation. Absolutely, this case does not present the issue of whether a juvenile's defense attorney can simultaneously serve as his guardian ad litem. Justice Burke, as you noted, a guardian ad litem is typically appointed by the court. We have nothing in the record here where the court has never appointed this counsel, Novak, as a guardian ad litem. And in fact, the statute would have required the court to make a specific finding in order to do so. I believe that under the statute, a juvenile is only entitled to a GAL in a delinquency proceeding if the court finds a conflict of interest between the juvenile and his parents. We know that no such finding was ever made. There was no finding that he was a GAL. We can discuss what is a GAL. A GAL is an obligation. It's an obligation to the court. It's an arm of the court. A GAL... There was no, in this case, there was no payments were made for him being appointed as a GAL. He was solely retained by the parents to represent the two respondents. What specific actions were taken by the attorney and what arguments did he make to demonstrate that he was a zealous advocate for the minor and that he was holding the state to its burden of proof? Counsel, well, at the outset, counsel did proceed to a hearing. Counsel, in his opening statement, reemphasized that the charges were contested. Notwithstanding these statements that he made regarding best interests, he made clear that the purpose of this hearing was to hold the state to its burden of proof. Now, in his closing argument, he argued strenuously that the children in this case were not credible and that the state had failed to meet its burden. And furthermore, we know that counsel in this case arranged a sort of deal with the state, where the state would present the testimony of the child victim solely via videotape, and in exchange for this sort of arrangement, would recommend probation at a dispositional hearing. Now, this is actually a remarkable concession on the part of the state. We know that the conduct that he admitted to was seriously problematic. If, in fact, he was allowing another child to perform oral sex, I mean, two years of probation is not a typical sort of sentence. And the trial court, in imposing the sentence at the dispositional hearing, actually lamented the fact that it hadn't earlier clarified that it didn't, it wouldn't be bound by the state's recommendation. So there is actually evidence in the record that the court, but for the arrangement that counsel had entered into, would have imposed a more severe sentence, probably committing him to the juvenile justice facility for a period of up to one year. Ms. O'Connell, on what basis was it appropriate for counsel to waive Austin's confrontational rights? This actually served the respondent's interests. The videotaped statements included a lot of allegations that, in effect, undermined the credibility of the children. So the respondent benefited from having the court view all of these statements in their entirety. So, for example, what Dillon's, Dillon's own credibility was undermined by the defendant's own credibility. His report of this orgy that the court found incredible. Willie's testimony was completely thrown out. Really, the respondent could not have gotten a better result than the trial court ultimately found, which is that all but one of the children's statements were essentially not credible. He couldn't, he couldn't have asked for a better result had he forced the state to present the live testimony and then cross-examine the children. I'd like to emphasize that the state doesn't dispute a lot of the principles that the respondent has advanced in this case. The state doesn't dispute that a juvenile in a delinquency proceeding is entitled to defense counsel who will serve his interests loyally. We don't dispute that this is to some extent coextensive with an adult defendant's right to counsel. The question here is, would this have, would this have satisfied the right to counsel for an adult criminal defendant? And this is where we part ways and say, absolutely, in this case he received exactly the same level of representation that an adult would have received. Now, on the one hand, the professional rules provide uniform guidance for both juveniles and adults. We know under the professional rule 1.14, that regardless of the age, an attorney is expected to judge the capacity of the defendant in terms of determining how much of the normal attorney-client relationship can be preserved and how much of the capacity of the defendant can be preserved in particular instances. So we're not actually arguing for a different result for minors. The fact is under rule 1.14, it specifically cites minority as a source of diminished capacity, so it should be expected that minors would more often be found to have diminished capacity. But the same rules also apply to adult criminal defendants. So the question in this case is just as it would be in an adult case, did the attorney satisfy the Strickland standard here? And clearly he did. And we know from the presentation of the evidence that Ricky was even acquitted because of this agreement to have the state proceed by weakened testimony. In addition, he did get this really dramatic concession in terms of the probation recommendation at the dispositional hearing. Nothing distinguishes this case from an adult situation. And even in the adult context, a defendant does not determine every single step in the litigation. In an adult context, whether to cross-examine a witness and how to cross-examine a witness are strategic decisions that rest with the attorney. An adult's expressed wishes in terms of a particular course of action would necessarily guide the attorney's actions, because the attorney is the professional who has the knowledge background to know the best way to proceed. In terms of, well, what were the expressed wishes here, we know that he wanted an acquittal, and we know that counsel fought strenuously to try to get an acquittal for him. That would be identical to what we would expect if he was acquitted. He was acquitted because he had been an adult. Could you address counsel's argument regarding how there was representation of both the accused and one that was also a victim? Yes, Your Honor. This is a fairly unusual case. The defendant is relying on a per se rule that this Court has adopted where there's a clear relationship between counsel and a victim and counsel and an offender. But the facts of this case do not match up to that sort of a relationship. One thing I would especially like to note is that although Ricky was an alleged victim of Respondent, Respondent was also an alleged victim of Ricky. It was nearly identical charges, and this is in, I don't believe that Ricky's petition is in the record, but we know from the transcript, September 25th of 2006, pages one and two, it does discuss what the charges are, and it confirms that there really was an alleged victim of Ricky. So we don't have a situation where either of these two individuals has actually accused the other. We have a unique scenario where a third party has alleged that both of the Respondents have engaged in conduct with each other that they both deny. So looking realistically... I'm sorry, I'm misunderstanding what you're saying here. The State charged, brought these charges, correct? Correct. And the State charged each one of them with certain kind of conduct? Correct, in the petitions. In the petitions. So this is not a third party, this is the State that is bringing these charges. They are listed in the petitions, that is true. But if you look realistically at what occurred in the case and what the case was about, this wasn't, even though it was included in the petition, it wasn't a point that the State really argued for at the closing argument, for example, or it appears that even though they were named in the petition, it was more that the State focused on the other aspects of the charge and almost declined to prosecute this particular act. And so really the only evidence at all that we have that he was an alleged victim is in the petition. But if you go forward and you look at the evidence and you look at the arguments, the State really didn't press the point that one was the victim and one was the offender. Instead, in the case, it's better understood if you look realistically at the circumstances that these were two respondents in nearly identical circumstances. They shared a common defense of undermining the credibility of this third party who had stated that the two of them were engaged in conduct together. Does the idea of a per se conflict arise before trial based on the pleadings? Or do we have to analyze it in terms of how the trial was conducted? The court has never adopted a rule that says just because it's in the charges that that gives rise to a conflict. Where the court has found a conflict, it has looked at the nature of the case as it proceeds. So there's no clear answer to that, but it does make more sense, the per se rule has a dramatic remedy. And the court, although once you get to the per se rule, the court doesn't assess whether he has proven prejudice, the court does have to make a threshold determination that this actually falls within the type of relationship that the per se conflict rule was designed for. And in its rationale in explaining the per se rule is that the conflicting loyalties lie to one person who would have a benefit if the defendant were convicted. And if you look at that rationale in this context, it doesn't fit. Because here they, neither of the two of them would have benefited from a conviction against the other. They had an identical defense in this case. If the court has no further questions, I would just urge that the court not adopt a rule that is different from the adult context. The court should apply the exact same rule that it would apply to adult defendants. And when it applies that rule, the Strickland rule in this case, it should find that this juvenile received just as good a representation as he would have had he been an adult defendant. We would ask that you affirm the judgment of the appellate court in this case. Thank you, counsel. Counsel for the appellate? First, very briefly in addressing the state's best interest hybrid argument, the state makes clear that it's not arguing for a different standard in delinquency and adult proceedings. But in this case, that's exactly what the appellate court did in its published opinion. So it is necessary for this court to address the issue, regardless of the state's concession, about what kind of representation a child is entitled to this opinion and also an almost identical opinion. And in Ray Rodney asks, is sitting out there out of the fourth district, approving a representation where an attorney who is supposed to be acting as a defense attorney is not. And the state can also act as a best interest attorney and significantly in this case at the adjudicatory phase of the proceedings, when the minor enjoys all of the rights of the right to be proven guilty beyond a reasonable doubt, notice, confrontation, cross-examination. I would also note that even if the court didn't appoint counsel as GAL in this case, that's how counsel behaved. Counsel described his role as a best interest attorney. So whether the appointment was a formal GAL or not, the attorney in this case operated under conflicting interests, a duty to serve the best interest of the child and a duty as a defense attorney to proceed under the express interest model. When you're saying the attorney said he had the best interest of the child at heart, those are words of art, I guess, aren't they? Best interest of the child and the best interest of the defense attorney. And if there were only a fleeting reference to best interest, we wouldn't be standing here and making this argument. It really is the combination of the trial court's description of counsel's role, counsel's description of his own role, and counsel's attribution of important decisions to reasons that were unrelated to zealous defense advocacy. But when you talk about the reasons and the fact that the trial court discounted the video statements, it sounds like it was good trial strategy perhaps to do what he did rather than having the witnesses called in to testify. Does that come into our analysis at all? I think that the response to that is twofold. First is we have to take counsel's statement at face value that the reason he did this were for reasons unrelated to what we would normally consider a legitimate defense strategy. I would also take some issue with the notion that counsel really benefited his client by stipulating to these videotapes, by stipulating they came in substantively. If counsel really believed that these statements were so unreliable and so damaging, he still could have excluded them at a 11510 hearing, and then if the state called these witnesses, he had an incredibly powerful impeachment tool at his disposal in these statements where these foster children can't keep their stories straight within their own stories or outside their own stories. So it's this combination of trial counsel attributing it to an improper reason and the fact that this was no great shakes that the minor got. But if the trial judge, unless he did not completely discount all, and perhaps he did not, but if the trial court ultimately said they're incredible, then it doesn't make any difference, does it? Whether the witnesses are there or whether the incredible videotape that the trial judge didn't accept were there. I think that the state's position is there was some advantage to using the tapes. Not that they necessarily hurt the child, but there was some advantage that counsel was trying to exploit by allowing the state. Which was the deal made on the disposition. Yes. And I also disagree very briefly in terms of this, of also the agreement for the state not to seek prison was a particularly powerful concession. It is certainly important when you can always negotiate a deal to keep your client out of prison. But in this case, counsel didn't discuss that decision with his client during the proceedings that preceded trial when they were discussing this whole notion where counsel really, and tosses in at the tail end of all of his other wrong reasons for making the decisions that he makes. He tosses in at the end, oh, and by the way, the state's attorney offered a quid pro quo and they're not going to ask for incarceration in this case. And the trial court explores that a little bit. And the trial court says, Mr. and Mrs. M, are you satisfied with that deal? Did counsel discuss that with you? And Austin's parents said, yes, we sure did discuss that. The trial court never asked the attorney's client whether the attorney had discussed any sort of a deal or concession with the client. Should we factor into our analysis the fact that the parents hired this attorney for both of their boys in connection with your concerns about the per se conflict or the actions that the lawyer took? It certainly complicated things, but ultimately that lawyer had an obligation to step aside when the conflict was present. In part of the discussion where he's talking about why he's making certain decisions, he says, I cannot imagine representing both of these clients if we were in adult criminal court. He essentially concedes there's a conflict of interest here. But juvenile proceedings are less adversarial. It's not that big of a deal. This is something that I feel like I can handle. Counsel, in terms of, I forget the phrase you used, but the parents hiring the attorney doesn't rule a professional responsibility for the client, regardless of who pays the fees? It does run to the client. But in this case, again, it's complicated because counsel didn't understand the role that he was charged with fulfilling. And the other thing that I would note is that the rules of professional responsibility control all conflicts of interest, but yet this court creates special per se rules of conflict of interest and said there are certain conflicts that are so fraught with danger that are so difficult to find the prejudice behind that we're going to call this a per se conflict of interest, even though it may not be an actual conflict of interest under all circumstances. And even though the rules of professional responsibility are always there at the foundation of counsel's obligation. So this court says we need to create per se rules for this exceptional category of cases, even though the rules of professional responsibility would otherwise obligate counsel not to undertake these types of representation. And in your analysis, the fact that he operated as a GAL, or arguably so, that the term is the per se conflict, not the fact that he was representing two victims who were mutually, one was accused of injuring the other. He operated under two distinct per se conflicts. One is the conflict of interest based on whether he was serving best interest or express interest of the single client. He also, in argument two in the brief, he also operated under this per se conflict of interest based on a victim-based conflict, based on the fact that he was also representing a named victim in the case. You also argued, at least in your brief, that by the way this operated, he was really denying his right to counsel. Absolutely. Yes. Yes. His right to a defense attorney. I would ask this court to reject the state's invitation to explore further victim-based conflicts and dig further into the facts of the record. The rule is very clear. This court has stated it over and over and over again that an attorney cannot represent a victim and the accused in the same proceeding. Most recently in People v. Hernandez, this court found a per se conflict of interest even though counsel's representation of the victim in that case, he hadn't had contact with the victim for over two years and the representation was not active. There is a critical, critical reason for not allowing attorneys to undertake that type of representation. And by taking what is otherwise on its face, when you look at the charging instruments, a per se conflict of interest and saying, well, let's take a look and see, was it really a conflict? Did they really have conflicting interests? That takes the analysis down the path that this court has said it doesn't want to go in per se conflicts. There's no inquiry into the facts. A per se conflict is a per se conflict. And there are certainly scenarios under which this court could imagine where you would have a victim and an accused where the offender had not walked down to the police station and made an accusation against the defendant, but the state still has a very legitimate interest in prosecuting that person. And I would think, for example, I think the easiest example that comes to mind are domestic violence cases where women are unwilling to press charges against their abusers. Would this court say that an attorney who represented the victim in a domestic violence case and the accused battered up the offender wasn't operating under a conflict of interest? And I think that the answer to that is no, because that situation is so fraught with an actual conflict of interest to pop up at any moment. Thank you. Case number 111195, In re Austin M, is taken under advisement agenda number two. Thank you for your arguments.